UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHULA BRAND CA, Corp., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSUE E. RODRIGUEZ MARTINEZ, an individual, and IRMA P. HERNANDEZ, an individual, both d/b/a ERVEY PRODUCE, and ERVEY PRODUCE, INC., a California corporation,<br><br>Defendants. | Case No.: 17cv37-JLS (KSC)<br><br>**ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE**<br><br>(ECF No. 2) |

Presently before the Court is Plaintiff Chula Brand CA's Application for Temporary Restraining Order Without Notice ("TRO Appl.") (ECF No. 2), concurrently filed with a Complaint to Enforce Payment from Produce Trust ("Compl.") (ECF No. 1). For the reasons set forth below, the Court **GRANTS** Plaintiff's TRO.

## BACKGROUND

Plaintiff is engaged in selling wholesale quantities of perishable agricultural commodities, *i.e.*, produce, in interstate commerce. (Compl. ¶ 3.) According to Plaintiff, between October 14, 2014 and November 25, 2014, Plaintiff sold and delivered to Defendants, in interstate commerce, wholesale amounts of produce in the amount of

1

$9,480.60. (*Id.* ¶ 6.) Defendants accepted this produce, and Plaintiff timely delivered invoices to Defendants containing language preserving its PACA rights. (Ludlow Decl. ¶¶ 7–8, ECF No. 1-3.) Plaintiff contends it has not been paid any monies by Defendants for the $9,480.60 worth of commodities sold, that—despite, "until recently, extend[ing] the due date for payment pursuant to the request from Defendants"—the payment is past due, and that Defendants have not disputed the debt in any way. (Compl. ¶ 10; *see id.* ¶¶ 6, 12.)

Additionally, several of Defendants "long time" friends recently extended Defendants a loan in the amount of $27,000.00. (Halbo Decl. ¶ 3, ECF No. 1-4.) The purpose of the loan was to "enable Defendants to repay their debts to certain produce suppliers, namely to the Plaintiff . . . [and] to enable Defendants to carry on their business . . . ." (*Id.*) After Defendants repaid $6,000 of the debt, they defaulted on the balance. (*Id.*) Upon default, Defendants' friends assigned the loan to Plaintiff. (*Id.*; Compl. ¶ 12.)

Plaintiff seeks enforcement of the statutory trust established under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a to t, and the regulations issued pursuant thereto. (TRO Appl. 1–2.) Plaintiff alleges that it has preserved its interest in the PACA trust in the full amount of $9,480.60 and that Defendants are failing to comply with their statutory duties under PACA to hold this undisputed amount in trust for the benefit of Plaintiff and to pay said sum to Plaintiff. (Compl. ¶¶ 9, 11–12.) Plaintiff also argues that the unpaid amount on the assigned loan—$21,000.00—"was made to the Defendants for the express purpose of replenishing PACA trust assets to their PACA creditors" and therefore also "qualifies for trust protection." (TRO Appl. 3.) Accordingly, Plaintiff requests that this Court issue an immediate injunction "restraining the transfer of any and all PACA assets of Defendants Josue E. Rodriguez Martinez, . . . Irma P. Hernandez, and Ervey corporation" until "there is payment to Plaintiff of $30,480.60 plus interest, attorney fees, and costs, pending entry of a Preliminary Injunction." (TRO Appl. 1.)

/ / /

/ / /

/ / /

## LEGAL STANDARD

PACA was enacted in 1930 to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce" and "provides a code of fair play . . . and aid to [agricultural] traders in enforcing their contracts." Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions to Effect a Statutory Trust, 49 Fed. Reg. 45735, 45737 (Nov. 20, 1984) (to be codified at 7 C.F.R. pt. 46).

In 1984, PACA was amended to assure that suppliers of produce are paid by imposing a statutory trust on all produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers, and brokers. 7 U.S.C. § 499e(c)(2); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3rd Cir. 2000); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990). The trust must be maintained for the benefit of the unpaid suppliers, sellers, or agents who provided the commodities until full payment has been made. § 499(e)(c). The trust provision thus offers sellers of produce, "a self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." 49 Fed. Reg. at 45737.

Failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Produce dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 C.F.R. § 46.46(e)(1). Dissipation of trust assets, defined as the diversion of trust assets or the impairment of a seller's right to obtain payment, (7 C.F.R. § 46.46(b)(2)), is forbidden. 7 C.F.R. § 46.46(e)(i).

A valid contractual claim for attorney fees and interest is within the scope of a PACA trust claim because the fees and interest are "sums owing in connection with perishable

agricultural commodities transactions." *See Middle Mountain Land & Produce Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1222–25 (9th Cir. 2002) (interpreting 7 U.S.C. § 499e(c)(2)). Additionally, a district court may, in its discretion, "award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants . . . ." *Id.* at 1226.

## ANALYSIS

### I. TRO Standard

Under Federal Rule of Civil Procedure 65(b), a plaintiff must make a showing that immediate and irreparable injury, loss, or damage will result if the court does not grant her motion for a TRO. In particular, a court may not grant a TRO without notice to the adverse party unless "specific facts in an affidavit or a verified complaint" show immediate and irreparable harm, and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)–(B). TROs are governed by the same standard applicable to preliminary injunctions. *Stuhlbard Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *see Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001).

The Ninth Circuit has set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief. *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't. of Agric.*, 415 F.3d 1078, 1092–93 (9th Cir. 2005) (internal quotations and citations omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). "Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Ranchers Cattlemen*, 415 F.3d at 1092. "The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.*

### A.     The Traditional TRO Test as to the $9,480.60

The facts of this case show that Plaintiff is entitled to a TRO under the traditional test as discussed below.

### (i)     Likelihood of Success on the Merits

Plaintiff demonstrates a strong likelihood of success on the merits because Plaintiff appears entitled to enforce the PACA trust provisions and regulations to secure its trust claim for $9,480.60. First, Plaintiff is a supplier or seller of wholesale quantities of produce. Second, Plaintiff sold to Defendants, in interstate commerce, wholesale quantities of produce in the aggregate amount of $9,480.60, which is allegedly past due and unpaid. Third, Plaintiff seems to have properly preserved its status as a trust creditor of Defendants under PACA by sending to Defendants PACA-compliant invoices for the produce and timely filing with this Court. *See Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) (noting that PACA is mostly silent regarding its statute of limitations and therefore turning to state law regarding fiduciary duty to determine appropriate limitations period). Fourth, Defendants' failure to pay and statement to Plaintiff that they lack sufficient funds to pay the outstanding debt indicate a strong likelihood that Defendants are failing to maintain sufficient assets in the statutory trust and are dissipating trust assets.[1]

### (ii)     Possibility of Irreparable Injury

Plaintiff demonstrates a strong possibility of irreparable injury because in the absence of preliminary relief Defendants could completely deplete the statutory trust. Loss of such assets would be irreparable because Plaintiff would not be able to recover the trust assets once they are dissipated, and Plaintiff would be forever excluded as a beneficiary of

---

[1] As currently pled, there is doubt as to whether Plaintiff will succeed in its request for attorney fees. Although a valid contractual claim for attorney fees and costs is encompassed by PACA, PACA on its own does not provide an express statutory basis for attorney fees. *Middle Mountain Land & Produce*, 307 F.3d at 1225. In the present case, Plaintiff does not allege any specific contractual provision in the invoices which subject Defendants to liability for attorney fees, nor does Plaintiff explicitly allege any bad faith by Defendants. (*See* Compl. ¶¶ 15–17.) However, these potential deficiencies do not ultimately affect the Court's overall conclusion regarding the balance of equities implicated by the TRO.

the statutory trust. *See* H.R. Rep. No. 543, 98th Cong. 2d Sess. 4 (1983), reprinted in 1984 U.S. Code Cong. & Admin. News, 405, 411; *Tanimura & Antle, Inc.*, 222 F.3d at 140; *J.R. Brooks & Son, Inc. v. Norman's Country Mkt., Inc.*, 98 B.R. 47 (Bankr. N.D. Fla. 1989); *Cont'l Fruit Co. v. Thomas J. Gatziolis & Co.*, 774 F. Supp. 449 (N.D. Ill. 1991); *Gullo Produce Co. v. A.C. Jordan Produce Co.*, 751 F. Supp. 64 (W.D. Pa. 1990).

   *(iii)   Balance of Hardships and Public Interest*

Plaintiff demonstrates that the balance of hardships tips strongly in its favor and that public interest here favors an entry of preliminary relief. By enjoining Defendants from dissipating trust assets, Defendants would only be required to fulfill the duties imposed by statute. *Tanimura & Antle, Inc.*, 222 F.3d at 140. Further, PACA specifically declares that the congressional intent behind its passage is to protect the public interest and to remedy the burden on dealers, such as Plaintiff, by receivers who do not pay for produce. *Id.*; 7 U.S.C. § 499e(c)(1).

   *(iv)   Conclusion*

Plaintiff satisfies the traditional test for an entry of a TRO regarding the outstanding $9,480.60 of PACA trust assets.

   **B.   *The Traditional TRO Test as to the $21,000.00***

Plaintiff additionally requests a TRO regarding the $21,000.00 owed on the assigned note, alleging that:

> Said loan was made for the express purpose to replenish trust assets and thereby enable Defendants to pay the Plaintiff as well as other similarly situated PACA creditors. Defendants breached their PACA fiduciary duty regarding this PACA fund financing by: 1) obtaining the PACA funds falsely stating that they would use the funds to payoff [sic] PACA creditors with no intent of doing so; 2) failing to exercise fiduciary care over the PACA funds; 3) failing to use the PACA funds to pay off the Plaintiff who is a PACA creditor; 4) failing to use the PACA funds to payoff [sic] other PACA creditors; [and] 5) failing to payback [sic] the PACA loan to the Plaintiff.

(Compl. ¶ 12.) In support, Plaintiff cites several cases for the general proposition that a PACA "trust is imbued with an unusual 'floating' characteristic, i.e., it applies to *all* of [a]

[d]ebtor's produce related inventory and proceeds thereof, regardless of [which] . . . produce supplier was the source of such inventory." *In re Fresh Approach, Inc.*, 51 B.R. 412, 422 (Bankr. N.D. Tex. 1985) (citing H.R. Rep. No. 98–543, 98th Cong., 1st Sess. 5 (1983), *reprinted in* 1984 U.S. Code Cong. & Ad. News 409, and 7 C.F.R. 46.46(c) (1984)); *see also In re Gotham Provision Co., Inc.*, 669 F.2d 1000, 1010–11 (5th Cir. 1982) (construing a highly analogous statutory scheme similarly).

Although in the present case it is not absolutely clear that the entire balance of $21,000.00 constitutes delinquent PACA-related debts, (*see* Halbo Decl. ¶ 3 (noting purpose of loan, in part, was simply "to enable Defendants to carry on their business")), it is ultimately Plaintiff's burden to show what portion, if any, of the $21,000.00 does not constitute PACA-related debt. *See In re Fresh Approach*, 51 B.R. at 422 ("[I]ndeed, it is the [d]ebtor who must determine which assets, if any, are *not* subject to the trust."). Given this ultimate burden, and that Defendants have continually failed to honor the underlying $9,480.60 debt, the Court thus concludes that this slight uncertainty regarding the specific amount of the $21,000.00 that encompasses PACA-related debt does not bar Plaintiff's TRO Application on this point. And because the factor analysis set forth above, *supra* Section I.A, otherwise applies with equal force to the $21,000.00 here at issue, the Court concludes that granting Plaintiff's requested TRO as to the $21,000.00 is also appropriate.

## CONCLUSION

Based on the foregoing reasons and consideration of Plaintiff's Application, the Court finds that Plaintiff risks immediate irreparable injury in the form of the loss of trust assets. Further, Plaintiff sufficiently explains its failure to notice Defendants as to this TRO, noting that "Defendants are selling trust assets and are about to flee the jurisdiction with the same[,]" (TRO Appl. 5 (citing Ludlow Decl. and Halbo Decl.)), "Defendants['] corporation has been suspended by the California Secretary of State[,]" (Wallis Decl. ¶ 5, ECF No. 2-4), and the TRO simply seeks to restrain the transfer of the remaining PACA funds held by third parties, "including Defendants['] Banking Institutions, specifically Bank of America, and a few retail customers of the Defendants whom [sic] may not have

made final payments to Defendants," (*id.* ¶ 6). Therefore, a TRO should be issued. The Court hereby **ORDERS**:

(1) Defendants, their customers, agents, officers, subsidiaries, assigns, banking institutions, and related entities, **SHALL NOT** alienate, dissipate, pay over, or assign any assets of Ervey Produce, Inc., or its subsidiaries or related companies, or of Josue E. Rodriguez Martinez or Irma P. Hernandez, except for payment to Plaintiff, until further Order of this Court or until Defendants pay Plaintiff the sum of $30,480.60 by cashiers check or certified check. In the event of such payment, this Order shall be dissolved.

(2) In the event Defendants fail to pay Plaintiff the sum referenced in the previous paragraph by cashiers or certified check within five business days of service of this Order, then the Defendants shall file with this Court, and provide a copy to Plaintiff's counsel, an accounting which identifies the assets and liabilities and each account receivable of Ervey Produce, Inc., signed under penalty of perjury. Defendants shall also supply to Plaintiff's attorney, within ten days of the date of the Order, any and all documents in connection with the assets and liabilities of Ervey Produce, Inc. and its related and subsidiary companies, including, but not limited to, the most recent balance sheets, profit/loss statements, accounts receivable reports, accounts payable reports, accounts paid records and income tax returns.

(3) Bond **SHALL BE WAIVED** in light of the fact that Defendants now hold the aggregate amount of at least $9,480.60 of Plaintiff's assets.

(4) Pursuant to Federal Rule of Civil Procedure 65(b)(2), the TRO **SHALL** "state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record."

/ / /
/ / /
/ / /
/ / /

(5) Pursuant to Federal Rule of Civil Procedure 65(b)(2), the TRO **SHALL** endure <u>for fourteen days only</u>, unless Plaintiff seeks extend the TRO's duration.

**IT IS SO ORDERED.**

Dated: January 11, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge